```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
                                    :
In re Grand Jury Subpoena to        :    19 Mag. 2821 (LAP)
Google, LLC Dated March 20, 2019,   :
███████████████   █████████         :
                                    :
                                    :
In re Application of the United     :    19 Mag. 3232 (LAP)
States of America for Order to      :
Disclose Non-Content Information    :
Pursuant to 18 U.S.C. § 2703(d),    :
███████████████   █████████         :
                                    :
                                    :    Memorandum & Order
                                    :
                                    :    UNDER SEAL
                                    :
-----------------------------------x
```

LORETTA A. PRESKA, Senior United States District Judge:

   Google LLC ("Google") moves to vacate or modify (1) a March

20, 2019 non-disclosure order signed by Magistrate Judge James

L. Cott (the "Subpoena NDO"), which accompanied a grand jury

subpoena directed to Google for records pursuant to 18 U.S.C.

§ 2703(c)(2) (the "Subpoena"), and (2) a April 2, 2019 non-

disclosure order signed by Magistrate Judge Robert W. Lehrburger

(the "Section 2703(d) NDO"), which was issued in connection with

an order to Google, pursuant to 18 U.S.C. § 2703(d), to produce

non-content information about certain account holders (the

"Section 2703(d) Order").[1]  (See Notice of Google LLC's Motion to

---

[1] The Subpoena NDO and Section 2703(d) NDO are collectively
referred to as the "NDOs" in this Order.

1

Vacate Gag Orders and Quash or Modify Order Issued Pursuant to 18 U.S.C. § 2703(D) (the "Motion"), dated Apr. 15, 2019.)

For the reasons stated below, the Motion is denied.

## I. BACKGROUND

Google provides free email services to the public under the email account domain "@gmail.com." It also offers businesses and other paying organizations online services registered under customizable email domains hosted by Google, i.e., enterprise account domains. As part of an ongoing grand jury investigation, on March 21, 2019, the Government served on Google the Subpoena requiring Google to produce certain records, including █████████████████ █████████████ █████████

█████████████████ ████████████████████████████

████████████████████████████████████████

██████. The Subpoena seeks records for specifically identified email accounts under the Google enterprise account domains ████████████ ███████████████ ███

█████████████████.[2] The enterprise account holders and

---

[2] The Government notes that the Subpoena also seeks records for three gmail.com accounts █ ██████████████
█████████████ █████████████████ that are not affiliated with those domains. The Government argues that Google has not indicated why it has failed to produce records relating to these accounts, or whether the Motion applies to these accounts. For purposes of deciding the Motion, the Court construes it as applying to these accounts as well.

several of the identified accounts appear to relate to



The Subpoena did not seek ████████████████████.

The Subpoena was accompanied by the Subpoena NDO signed by Magistrate Judge James L. Cott pursuant to 18 U.S.C. § 2705(b), who found, based upon the Government's written application, reason to believe that notification of the existence of the Subpoena would seriously jeopardize the grand jury investigation.[3] The Subpoena was accompanied by a preservation request[4] that Google preserve all information related to the

---

[3] Specifically, the NDO states, "The Court hereby determines that there is reason to believe that notification of the existence of the attached subpoena will result in one or more of the following consequences, namely, endangering the life or physical safety of an individual; flight from prosecution; destruction of or tampering with evidence; intimidation of potential witnesses; or otherwise seriously jeopardizing an investigation or unduly delaying a trial." (See Exhibit 3 to Declaration of John R. Tyler in Support of Google LLC's Motion to Vacate Gag Orders and Quash or Modify Order Issued Pursuant to 18 U.S.C. § 2703(D) ("Tyler Decl."), dated Apr. 15, 2019, 6 ¶ 1.)

[4] Without citing any legal precedent, Google argues (continued)

accounts identified in the subpoena for 90 days pursuant to 18 U.S.C. § 2703(f)(1). Google's response to the Subpoena was due on April 3, 2019.

On April 2, 2019, the Government served Google with the Section 2703(d) Order, signed by Magistrate Judge Robert W. Lehrburger and issued pursuant to 18 U.S.C. § 2703(d), requiring Google to produce certain non-content records associated with nine specified accounts and any accounts existing under the enterprise account domains ███████████



For the nine identified accounts, the Section 2703(d) Order requires Google to produce: ██ ████████████████████████

---

(continued) that the NDOs do not apply to the Government's preservation request. (Mem. at 17; Reply at 12-13.) The Court clarifies that the NDOs preclude Google from disclosing the Government's preservation request because disclosure of the preservation request would effectively contravene the court-imposed non-disclosure obligations regarding the Subpoena, the Section 2703(d) Order, and the existence of the investigation. This is supported, as discussed at length below, by the fact that two neutral magistrate judges concluded that there is reason to believe that disclosure could seriously jeopardize the ongoing, covert criminal investigation.

███████████████ (See Exhibit 4 to Tyler Decl. at 4-5.)   In
addition, for any email account registered under one of the
aforementioned enterprise domains, Google was required to
provide ██████████████████  █████████████████████

███████████████████  ████████████████████████

████████  (Id.)   The Section 2703(d) Order does not require the
production of ████████████████████████████████
████  ███████████████████████.   The Section 2703(d) Order
also prohibits Google from disclosing the "the existence of this
Application and/or Order, or the existence of the investigation,
to the listed subscribers or to any other person" for one year
based on a finding that such disclosure "would seriously
jeopardize the investigation."   (Id. at 1-2.)   Google was
required to produce the records covered by the Section 2703(d)
Order on or before April 12, 2019.

Upon receipt of the Subpoena, preservation request, and
Subpoena NDO (and before receipt of the Section 2703(d) Order),
Google preserved email communications associated with the
accounts identified in the Subpoena.   (See Exhibit 6 to Tyler
Decl. at 3.)   Google has not provided notice to any customers
pending the outcome of the Motion.   (Id.)

On March 30, 2019, Google first notified the Government
that it would move to vacate the Subpoena NDO on the ground that

"subpoenas . . . regarding enterprise data are more properly
directed to the enterprise itself, not Google." (Exhibit 5 to
Tyler Decl. at 9.) On April 2, 2019, Google filed a pre-motion
conference letter with Magistrate Judge Cott, requesting
permission to file a motion to vacate or modify the Subpoena
NDO. (See Exhibit 6 to Tyler Decl.)[5] Magistrate Judge Cott
instructed Google to file its motion with the Part I Judge.
(See Exhibit 7 to Tyler Decl.) On April 15, 2019, Google filed
the Motion. To date, Google has not produced any records in
response to the Subpoena or Section 2703(d) Order.

In the Motion, Google requests that the Court "vacate the
[NDOs] in their entirety and permit Google to provide notice to
the enterprises and Gmail account-holders identified in the
Subpoena and [Section] 2703(d) Order . . . about the pending
legal process" because they "are in the proper position to
review the requests and their own records, and then assert their
own constitutional rights." (Memorandum of Law in Support of
Google LLC's Motion to Vacate Gag Orders and Quash or Modify
Order Issued Pursuant to 18 U.S.C. § 2703(D) ("Mem."), dated
Apr. 15, 2019, 2, 17.) Specifically, Google argues that such

---

[5] Google informed the Court it "likewise anticipate[d] moving
quash or modify the [Section] 2703(d) Order and to vacate the
accompanying [Section 2703(d) NDO]" it had received from the
Government "shortly before submitting this letter . . . for the
reasons articulated in this letter and for additional reasons to
be provided in [the] Motion." (Id. at 2 n.3)

notice is necessary here because the enterprise account holders
and several of the identified accounts ████████████████████
████████████████████ ████████ ██████ ██████████████
████████████████████████████ ██████████████
██████████████████████████████
██████████████████████████████████████
██████████████████████████████████
████████ ██████ ██████

In addition, Google argues that the NDOs should be vacated
because "they are content-based prior restraints on speech that
cannot satisfy strict scrutiny (as they are not narrowly
tailored) and because they cannot satisfy the requirements of
the Stored Communications Act ('SCA'), 18 U.S.C. § 2705(b)."
(Id. at 2.)  Finally, Google argues that the Court "should quash
or modify" the Section 2703(d) Order "because it is overbroad
and seeks unusually voluminous electronic records related to a
swath of unknown accounts that the Government has not even
identified."  (Id.)  The Court finds no merit to any of Google's
arguments.

## II. **LEGAL STANDARD**

The SCA, and specifically 18 U.S.C. § 2703, establishes
procedures by which the Government may obtain access to
electronic communications and information.  Section 2703

distinguishes between "contents" and non-content "records." 18 U.S.C. § 2703. If the Government seeks content information about a communication, that is, "information concerning the substance, purport, or meaning of that communication," paragraphs (a) and (b) apply, and the Government is required to obtain a warrant based on a showing of probable cause. See 18 U.S.C. §§ 2510(8), 2703(a)-(b), 2711. If the Government seeks non-content records, as it does here, paragraph (c) controls. See 18 U.S.C. § 2703(c). Under Section 2703(c)(2), the Government may obtain, pursuant to a subpoena, among other things, subscriber information. See 18 U.S.C. § 2703(c)(2).

The SCA authorizes limited challenges to orders issued under Section 2703. A service provider from whom disclosure is ordered may make a prompt motion to "quash or modify such order, if the information or records requested are unusually voluminous in nature or compliance with such order otherwise would cause an undue burden on such provider." 18 U.S.C. § 2703(d). A subscriber or customer, by contrast, may not generally bring pre-execution challenges to subpoenas. Instead, their remedies are limited to a statutory challenge to a Section 2703 order issued pursuant to 18 U.S.C. § 2704 or post-execution remedies set forth elsewhere in the chapter. Under Section 2704, the subscriber or customer may only challenge an order containing a

requirement that the service provider create a backup copy of certain communication contents. 18 U.S.C. § 2704(b)(1)(A).

The SCA also authorizes the government to obtain, and a court to issue, non-disclosure orders in connection with legal process for electronic information based on an independent judicial determination that disclosure would result in one or more of an enumerated list of harms. See 18 U.S.C. § 2705(b). Specifically, Section 2705 states:

> A governmental entity acting under Section 2703 . . . may apply to a court for an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order. The court shall enter such an order if it determines that there is reason to believe that notification of the existence of the warrant, subpoena, or court order will result in--
>
> (1) endangering the life or physical safety of an individual;
>
> (2) flight from prosecution;
>
> (3) destruction of or tampering with evidence;
>
> (4) intimidation of potential witnesses; or
>
> (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial.

18 U.S.C. § 2705(b).

## III. DISCUSSION

### A. Standing

"[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341 (2006) (internal quotation marks and citations omitted); see also Sprint Commc'n Co., L.P. v. APCC Servs., Inc., 554 U.S. 269, 128 (2008) ("Article III, § 2, of the Constitution restricts the federal 'judicial Power' to the resolution of 'Cases' and 'Controversies.'"). "That case-or-controversy requirement is satisfied only where a plaintiff has standing." Sprint Commc'n Co., 554 U.S. at 128.

"The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013). Therefore, a court's standing inquiry is "especially rigorous" when the merits of the case would require the court "to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." Id. (quoting Raines v. Byrd, 521 U.S. 811, 819 (1997)).

Article III standing requires an injury-in-fact that is

"concrete, particularized, and actual or imminent; fairly
traceable to the challenged action; and redressable by a
favorable ruling." Monsanto Co. v. Geertson Seed Farms, 561
U.S. 139, 130 (2010). "The requirement that the plaintiff have
suffered a concrete and particularized injury in order to bring
an action guarantees that the party has a 'personal stake' in
the outcome of the litigation." Amidax Trading Group v.
S.W.I.F.T. SCRL, 607 F. Supp. 2d 500, 504 (S.D.N.Y. 2009)
(quoting Baker v. Carr, 369 U.S. 186, 204 (1962)); see
also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 n.1
(1992) ("[T]he injury must affect the plaintiff in a personal
and individual way.").

Here, the Government argues that Google "lacks standing to
raise objections to the Section 2703(d) order and grand jury
subpoena on behalf of account holders because Google has not
suffered an injury-in-fact and is not a representative of the
account holders." (The Government's Memorandum in Opposition to
Google's Motion to Vacate or Amend Non-Disclsure [sic] Order,
and Quash or Modify an Order Issued Pursuant to 18 U.S.C.
§ 2703(D) ("Opp."), dated Apr. 29, 2019, 8.) In response,
Google argues that it has standing to challenge the NDOs and
Section 2703(d) Order for two reasons: "[f]irst, Google has
standing to challenge Section 2705 gag orders that restrain its
speech," (Reply in Support of Google LLC's Motion to Vacate Gag

11

Orders and Quash or Modify Order Issued Pursuant to 18 U.S.C. §
2703(D) ("Reply"), dated May 6, 2019, 2); and "[s]econd, Google
has its own standing to seek review of the Section 2703(d) Order
and need not rely on the rights of its users" because "[t]he
statute itself authorizes Google to move to quash or modify an
'unduly burdensome' or 'overly voluminous' Section 2703(d)
order," (id. at 3 (quoting 18 U.S.C. § 2703(d)).).

To establish standing to assert a claim on behalf of a
third party, in part, the litigant "must have suffered an
'injury in fact,' thus giving him or her a 'sufficiently
concrete interest' in the outcome of the issue in dispute."
Fung-Schwartz v. Cerner Corp., No. 17-CV-233 (VSB), 2018 WL
4386087, at *4 (S.D.N.Y. Sept. 13, 2018) (quoting Powers v.
Ohio, 499 U.S.400, 411 (1991)); see also Liu v. New York City
Campaign Fin. Bd., No. 14-CV-1687(RJS), 2016 WL 5719773, at *5
(S.D.N.Y. Sept. 29, 2016) ("[E]ven when the prudential rule
against third-party standing does not apply, as in certain First
Amendment contexts, . . . a plaintiff must still satisfy Article
III's requirement of injury in fact."). As Google's two
theories of standing are both predicated upon the existence of
its own injury-in-fact, the Court analyzes them simultaneously
with the Government's argument that Google lacks third party
standing and concludes that Google failed affirmatively to

demonstrate the specific injury it personally will suffer as a direct result of the NDOs and Section 2703(d) Order.

As to Google's first argument, it asserts that the NDOs "are content-based prior restraints on Google's speech that must pass strict scrutiny to be permissible under the First Amendment." (Mem. at 14.)  However, as discussed below, assuming the NDOs are content-based, the Court finds they survive strict scrutiny.  Indeed, the ways in which Google claims its speech was restrained, or rather, how it was injured -- "[the NDOs] restrain Google's speech for an entire year" and the fact that "the Government could have obtained Orders that permit the provider to notify an appropriate official at the enterprise," (Mem. at 14-15) -- are neither "actual [n]or imminent," Monsanto, 561 U.S. 139, 130 (2010), because they are not "certainly pending," nor is "there a substantial risk that the harm[s] will occur,"[6] New York v. United States Dep't of

_____

[6] See Section III.D., infra (noting the DOJ Notice Guidance that Google relies on "expressly permits the Government to 'seek to delay notice for one year or less.'" (citing Reply at 9 (quoting DOJ Notice Guidance at 2 ¶ 4) (emphasis added)); id. ("[N]ot only has Google failed to cite to any authority requiring that a non-disclosure order must always 'enumerat[e]' the grounds upon which the Government relied to obtain it, (Reply at 12), but also, the DOJ Notice Guidance explicitly acknowledges that such an enumeration at this stage of the investigation is inappropriate because disclosure could seriously jeopardize the investigation.").  The "DOJ Notice Guidance" referred to here and in Section III.D., infra, is found at:  Policy Regarding Applications for Protective Orders Pursuant to 18 U.S.C. § 2705(b), U.S. Dep't of Justice, Office of the Deputy (continued)

Commerce, 351 F. Supp. 3d 502, 573-74 (S.D.N.Y. 2019) (quoting Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157 (2014)); see also Clapper, 568 U.S. at 409 ("'[A]llegations of possible future injury' are not sufficient." (quoting Whitmore v. Arkansas, 495 U.S. 149, 158 (1990))); Corbett v. City of New York, No. 13 Civ. 602 (PGG), 2013 WL 12334603, at *3 (S.D.N.Y. Sept. 17, 2013) ("[I]mminence . . . cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes – that the injury is certainly impending." (quoting Lujan, 504 U.S. at 564 n.2)).

Google's second argument that it "has its own standing to seek review of the Section 2703(d) Order" that it claims is "'unduly burdensome' or 'overly voluminous'" also fails. (Reply at 3 (quoting 18 U.S.C. § 2703(d)).)[7] Google "objects to the Section 2703(d) Order on its face because it seeks records associated with unidentified accounts," and asserts that "the

---

(continued) ATTORNEY GEN. (Oct. 19, 2017), https://www.justice.gov/criminal-ccips/page/file/1005791/download ("DOJ Notice Guidance").

[7] In a separate section of its briefing, Google argues "[t]he [Section] 2703(d) Order should be quashed or modified because it is overbroad and seeks records that are unusually voluminous in nature." (Mem. at 18; see Reply at 13-15.) The Court analyzes that argument here, together with Google's standing argument as they substantively overlap. For the reasons stated below, the Court concludes that Google lacks standing and the Section 2703(d) Order should not be quashed or modified because the order is neither "unduly burden[some]" nor "unusually voluminous." 18 U.S.C. § 2703(d).

Government cannot have shown 'specific and articulable facts showing that there are reasonable grounds to believe that . . . records' relating to unidentified Domain Accounts of which the Government is unaware 'are relevant and material to an ongoing criminal investigation.'" (Id. at 13-14 (quoting 18 U.S.C. § 2703(d))).

Google is correct that the statue provides it this basis to challenge the Section 2703(d) Order; however, Google does not have standing to bring this challenge because it failed to allege adequately an injury-in-fact stemming from the Section 2703(d) Order. Instead of binding authority, Google merely relied on "common sense," which, it claimed, "dictates that information could not have met the 'specific and articulable facts' standard with respect to the unidentified Domain Accounts' ███████████████████████ . . . irrespective of the information provided by the Government in its application or in its subsequent ex parte submission." (Id. at 14.) The Court, looking to a case Google itself relied on, finds Google's "bare-bones statement of its injury, without more, is too abstract to constitute a concrete and particularized injury in fact."[8] In re Grand Jury Subpoena

---

[8] Google's conclusory assertion that "[p]roviders may properly challenge the validity of legal process issued to them," (id. at 3), also fails because Google does not even attempt to argue how Google itself is at all injured by such legal process.

Issued to Twitter, Inc., No. 3:17-mc-40-M-BN, 2017 WL 9287146, at *5 (N.D. Tex. Sept. 22, 2017), report and recommendation adopted, No. 3:17-MC-40-M-BN, 2017 WL 9287147 (N.D. Tex. Oct. 19, 2017). This is particularly true in light of the fact that a neutral magistrate judge issued the Section 2703(d) Order precisely because he found the Government's application and ex parte submission -- which Google is not privy to -- demonstrated the "specific and articulable facts" standard was met and that there were reasonable grounds to believe that the requested records will be relevant and material to an ongoing investigation.

Google's claim that it has standing because the alleged "overbroad" volume of the Section 2703(d) Order places a "burden" on it that violates its "due process and property rights" is also lacking. (Reply at 3-4, 13.) Instead of alleging a burden that is "concrete, particularized, and actual or imminent," Monsanto, 561 U.S. at 130, such as identifying the number of accounts that it believes will be covered by the Section 2703(d) Order,[9] Google asserts that its "burden" is being "forc[ed] unwilling[ly] [to] compl[y] with what Google

---

[9] At oral argument, Google's counsel confirmed that Google is not arguing that production of the requested materials would be voluminous or burdensome in the conventional physical sense. (Sealed Transcript of May 30, 2019 Oral Argument, dated May 30, 2019, 31:1.)

'sincerely believe[s] to be an unlawful government intrusion.'" (Id. at 4 (quoting In re Apple, Inc., 149 F. Supp. 3d 341, 371 (E.D.N.Y. 2016)). Google continues that it "has a legitimate expectation of privacy at stake by virtue of its right to exclude from those accounts." (Id. (citing Byrd v. United States, 138 S. Ct. 1518, 1528 (2018)); see id. (citing Rakas v. Illinois, 439 U.S. 128, 143 n.12 (1978) (same)).)

Both arguments are insufficient because they do not show how the supposed "burden" to Google, resulting from the Section 2703(d) Order's allegedly "overbroad" volume, will cause Google any "real detriment." In re Grand Jury Subpoena Issued to Twitter, Inc., 2017 WL 9287146, at *5; cf. Enterline v. Pocono Med. Ctr., 751 F. Supp. 2d 782, 787 (M.D. Penn. 2008) (finding a newspaper had injury-in-fact where it demonstrated that failure to protect anonymous commentators will "compromise the vitality of the newspaper's online forums, sparking reduced reader interest and a corresponding decline in advertising revenues").

Accordingly, because Google has not demonstrated that it suffered the requisite injury-in-fact, the Court finds it has not shown that it has Article III standing to challenge the NDOs

or the Section 2703(d) Order itself or on behalf of the Account

Holders.[10]



[10] Courts have held "[t]he total omission of any additional pre-execution opportunity for a subscriber or customer to challenge a § 2703 order reflects Congress's intention to prevent such challenges." In re Application of the U.S. for an Order Pursuant to 18 U.S.C. sec. 2703(d), 830 F. Supp. 2d 114, 129 (E.D. Va. 2011) ("Had Congress intended to permit pre-execution challenges, Congress could easily have done so, whether in § 2703 or elsewhere.") Instead, the SCA provides post-execution remedies, including damages awards, civil or administrative actions, and the account holders "could litigate each and every one of their claims in a pretrial motion if they became subjects of a prosecution." Id. at 142; see 18 U.S.C. § 2704.





















For the











## D. Prior Restraints

"A judicial order 'forbidding certain communications when issued in advance of the time that such communications are to occur' is generally regarded as a 'prior restraint.'" <u>John Doe, Inc. v. Mukasey</u>, 549 F.3d 861, 871 (2d Cir. 2008), <u>as modified</u> (Mar. 26, 2009) (quoting <u>Alexander v. United States</u>, 509 U.S. 544, 550 (1993)). Because "[p]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights," <u>Nebraska Press Ass'n</u>

v. Stuart, 427 U.S. 539, 559 (1976), they "come[] to [a court] with a heavy presumption against [their] constitutional validity," Organization for a Better Austin v. Keefe, 402 U.S. 415, 419 (1971) (internal quotation marks omitted), and "carr[y] a heavy burden of showing justification," id. "A content-based restriction is subject to review under the standard of strict scrutiny, requiring a showing that the restriction is 'narrowly tailored to promote a compelling Government interest,'" Mukasey, 549 F.3d at 871 (quoting United States v. Playboy Ent. Group, Inc., 529 U.S. 803, 813 (2000)), "and that there are no 'less restrictive alternatives [that] would be at least as effective in achieving the legitimate purpose that the statute was enacted to serve,'" id. at 878 (quoting Reno v. ACLU, 521 U.S. 844, 874 (1997)); see also Doe v. Holder, 665 F. Supp. 2d 426, 433 (S.D.N.Y. 2009), on reconsideration in part, 703 F. Supp. 2d 313 (S.D.N.Y. 2010) (noting "[t]he First Amendment requires that a nondisclosure order be maintained only as long as" the strict scrutiny standard set forth in Mukasey is met (emphasis added)).

Assuming arguendo that the NDOs are content-based, the Court finds they survive strict scrutiny. Google argues that the NDOs are not narrowly tailored for two reasons: first, "[the NDOs] restrain Google's speech for an entire year;" and second, "the Government could have obtained Orders that permit the

provider to notify an appropriate official at the enterprise."
(Mem. at 14-15.)  The Court rejects both arguments.

As to the first, Google cited no authority for the position
that a year-long non-disclosure order is not sufficiently
tailored in length.  In fact, Google quoted from the DOJ Notice
Guidance, which expressly permits the Government to "seek to
delay notice <u>for one year</u> or less."  (Reply at 9 (quoting DOJ
Notice Guidance at 2 ¶ 4) (emphasis added)).  Again, the Court
notes that two neutral magistrate judges determined that the
year-long NDOs were appropriate based on reasons set forth by
the Government, including that the circumstances justifying the
issuance of the orders would likely continue for at least one
year.  (<u>See</u> Opp. at 18.)  Google has cited to no authority
supporting its baseless assertion that "[t]he fact that one year
is 'the regular practice within this District,' Opp. at 19, does
not mean that one year is appropriate in <u>this case</u>."  (Reply at
10.)

As to Google's second argument, Google claims it should be
permitted to notify an "appropriate official," which "could
include in-house or outside legal counsel, and if appropriate
the Court could impose non-disclosure obligations on that
official."  (Mem. at 15.)  Google's position is undercut by the

very statute it claims is being defied by the NDOs.[13]  Contrary

to Google's assertion, in 18 U.S.C. § 2705(b), Congress did not

require the Government to prove that there is <u>no</u> person to whom

notice of legal process can be given without causing an

enumerated harm.  Instead, Section 2705(b) merely requires the

Government to demonstrate that there is "reason to believe" that

notification of legal process would result in an enumerated harm

to the investigation.  18 U.S.C. § 2705(b).  Once such a finding

is made, Section 2705(b) requires a court to issue an order

prohibiting the service provider from disclosing legal process

to "any other person."  <u>Id.</u>  Section 2705(b) does not, however,

---

[13]  This is also true of the non-binding white paper produced by
the Department of Justice regarding data of enterprise customers
of providers that Google cited.  <u>See</u> <u>Seeking Enterprise Customer</u>
<u>Data Held by Cloud Service Providers</u>, U.S. DEP'T OF JUSTICE, CRIMINAL
DIVISION, COMPUTER CRIME AND INTELLECTUAL PROPERTY SECTION (Dec. 2017),
https://www.justice.gov/criminal-ccips/file/1017511/download
("DOJ Enterprise Guidance").  Quoting to cherry-picked language
from the DOJ Enterprise Guidance, Google claims that "the
Government could have obtained Orders that 'permit[] the
provider to notify an appropriate official at the enterprise
without posing a risk to the integrity of the investigation.'"
(Mem. at 15 (quoting DOJ Enterprise Guidance at 3-4).)  But a
separate part of that very same DOJ Enterprise Guidance -- which
Google failed to quote -- states that seeking to compel
production of enterprise data directly from providers may be
necessary where going to the enterprise would "compromise the
investigation" or create a "risk of an adverse result for the
investigation."  DOJ Enterprise Guidance at 2-3.  As repeatedly
noted, <u>in this case</u>, the two neutral magistrate judges who
issued the NDOs found reason to believe that disclosure will
seriously jeopardize the investigation upon review of the
Government's <u>ex parte</u> applications.

contemplate authorizing the service provider selectively to disclose legal process to a particular person, most likely, as the Government argues, "because it is so difficult in the vast majority of criminal investigations to know with any certainty to whom the existence of the investigation may safely be disclosed." (Opp. at 19.)

Google's proposal, and particularly its argument that "whether legal contacts could comply with their duties would be better litigated by those contacts, not Google," (Reply at 10), would effectively remove from a neutral magistrate judge the balancing of First Amendment interests with the Government's interest in both maintaining the secrecy of the grand jury and the ability to collect additional evidence without the risk of destruction or tampering. The Court rejects Google's argument that "[t]he Government swings too hard in attempting to justify its compelling interest favoring secrecy." (Id.) As mentioned above, two neutral magistrate judges issued the NDOs based on determinations that the statutory standard was satisfied by the facts in this case, after their review of the Government's ex parte applications. Because Google is not even privy to these applications, its proposal is based on nothing more than pure speculation. See In re Application of the United States of America for an Order of Nondisclosure Pursuant to 18 U.S.C. § 2705(b) for Grand Jury Subpoena, 41 F. Supp. 3d 1, 6 (D.D.C.

2014) ("[N]othing in the record or common experience reflects that there would be information a service provider could offer that would assist the court in assessing whether the government has met the statutory showing.").

Finally, Google takes issue with the fact that the NDOs do not list which of the Section 2705(b) factors were identified as justifications for the NDOs. (See Mem. at 15-16; Reply at 11-12). Google argues that the NDOs flout U.S. Department of Justice Guidance on Section 2705(b), which states that "prosecutors should tailor the application to include the available facts of the specific case and/or concerns attendant to the particular type of investigation" and "should identify which of the factors set forth in § 2705(b)(1)-(5) apply and explain why." (Reply at 11-12 (quoting DOJ Notice Guidance at 2 ¶ 2).

Although "[t]he First Amendment requires that [a restraint on speech] be narrowly tailored, [it does] not [require] that it be 'perfectly tailored,'" Williams-Yulee v. Fla. Bar, 135 S. Ct. 1656, 1671 (2015) (citation omitted), and the DOJ Notice Guidance Google cited, but seemingly failed to read fully, contemplates just that. The very same paragraph that Google quoted from continues, "[a]s appropriate, prosecutors may state the extent to which the stage of the investigation limits the availability of specific facts justifying the § 2705(b) order."

DOJ Notice Guidance at 2 ¶ 2 (emphasis added). Further, the DOJ Notice Guidance reads, "[w]hen applying for a § 2705(b) order to accompany a subpoena seeking basic subscriber information in an ongoing investigation that is not public or known to the subject(s) of the investigation, stating the reasons for protection from disclosure under § 2705(b)-such as the risk that subject(s) will flee, destroy or tamper with evidence, change patterns of behavior, or notify confederates-<u>usually will suffice</u>. <u>At a later stage of the investigation</u>, for example, when a search warrant is being sought, <u>the prosecutor should include more specific facts, as available, in support of the protective order</u>." <u>Id.</u> at 2 ¶ 2 n.2 (emphasis added). As such, not only has Google failed to cite to any authority requiring that a non-disclosure order must always "enumerat[e]" the grounds upon which the Government relied to obtain it, (Reply at 12), but the DOJ Notice Guidance explicitly acknowledges that such an enumeration at this stage of the investigation is inappropriate because disclosure could seriously jeopardize the investigation.

Moreover, in <u>In re Grand Jury Subpoena to Facebook</u>, a case also relied on by Google, the court states that the

> language of [18 U.S.C. § 2705(b)] inherently assumes
> that sometimes notifying the target of the existence
> of an investigation will result in certain types of
> misconduct but that other times it will not, and that

37

> it is up to a judge to make the necessary
> determination in a given case based on the available
> evidence.

2016 WL 9274455, at *4. That which is expressly permitted by the statute is exactly what played out here; two neutral magistrate judges familiar with the nature and scope of the Government's covert criminal investigation independently issued the NDOs based on determinations that Section 2705(b)'s standard was satisfied by the facts in this case.

Finally, the Court finds "there are no 'less restrictive alternatives [that] would be at least as effective in achieving the legitimate purpose that the statute was enacted to serve.'" Mukasey, 549 F.3d at 878 (quoting Reno, 521 U.S. at 874). The Supreme Court and the Court of Appeals have repeatedly upheld non-disclosure provisions that prohibit disclosure of information learned solely by means of participating in confidential proceedings or grand jury investigations because they found such limitations less restrictive of First Amendment interests than laws that prohibit disclosing information independently obtained. See, e.g., Seattle Times Co. v. Rhinehart, 467 U.S. 20, 32 (1984) (upholding protective order prohibiting dissemination of information because the litigants "gained the information they wish to disseminate only by virtue of the trial court's discovery processes" and "continued court control over the

discovered information does not raise the same specter of government censorship that such control might suggest in other situations"); Kamasinski v. Judicial Review Council, 44 F.3d 106, 111 (2d Cir. 1994) (noting, in considering a statute prohibiting disclosure of information learned through participation in a confidential proceeding, that "the limited ban on disclosure of the fact of filing or the fact that testimony was given does not run afoul of the First Amendment").

Courts have upheld non-disclosure orders in connection with official investigations in recognition of two important considerations at play in the instant case: the fact that the prohibition is limited to disclosure of facts learned solely by virtue of a given person's participation in the proceedings and the importance of secrecy to the investigations. See Rhinehart, 467 U.S. at 34 (1984) ("[I]t is significant to note that an order prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny."); Kamasinski, 44 F.3d at 111 (finding that prohibiting the disclosure of information gained through interactions with the Connecticut Judicial Review Council (JRC) would not violate the First Amendment because "the proceedings of the JRC would effectively be made open" by such disclosure).

"The principle Rhinehart and its progeny represent" is that because a recipient of a non-disclosure order "learns that an [order] has been issued only by virtue of [his or her] particular role in the underlying investigation . . . it presumptively does little violence to First Amendment values" to impose an "obligation of at least some secrecy." Doe v. Ashcroft, 334 F. Supp. 2d 471, 519 (S.D.N.Y. 2004), vacated on other grounds, 449 F.3d 415 (2d Cir. 2006). Indeed, that is precisely the case before the Court. Because Section 2705(b) non-disclosure orders restrict disclosing only a limited category of information -- namely, the existence of legal process regarding a particular user -- and this is information Google learned only through its receipt of judicially-authorized legal process, the Court finds that the NDOs "do[ ] little violence" to Google's First Amendment rights.[14]  See Mukasey, 549 F.3d at 876 (noting that a non-disclosure letter "is not a typical example of such a restriction for it is not a restraint imposed on those who customarily wish to exercise rights of free

_____

[14] As the Government notes, "the orders here do not limit Google's right to speak on particular topics of public importance or to express particular views or opinions, but rather only limit Google's speech relating to specific court-authorized Government requests, and only for a one-year period. Google is not restrained from disseminating information to the public at large about, inter alia, the fact of receipt of orders, the time or place in which the orders were received, or the total number of orders it receives."  (Opp. at 18.)

expression"). As such, Google is wrong that the Government is "tossing a blanket of silence over the entire order," (Reply at 11 (quoting In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders, 562 F. Supp. 2d 876, 887 (S.D. Tex. 2008)); instead, the Court finds the minimal restraints imposed by the NDOs do not significantly curtail Google's First Amendment rights.

Accordingly, the Court finds the NDOs are not invalid because they are narrowly tailored to achieve the Government's compelling interest in the integrity of its ongoing, covert criminal investigation.

## IV. **CONCLUSION**

For the foregoing reasons, Google's Motion to Vacate Gag Orders and Quash or Modify Order Issued Pursuant to 18 U.S.C. § 2703(D) is denied.

SO ORDERED.

Dated:     New York, New York
           June 3, 2019

                          _Loretta A. Preska_
                          LORETTA A. PRESKA
                          Senior United States District Judge